[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-17577
Non-Argument Calendar

_____

D.C. Docket No. 2:15-cv-00004-LGW-RSB

RUSSELL W. SMITH,
LYNETTE SMITH,

                                                      Plaintiffs-Appellants,

versus

NICK ROUNDTREE,
ARCHIE DAVIS,
ANTHONY BROWN,
THE CITY OF DARIEN,

                                                      Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(August 21, 2017)

Before MARCUS, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants Russell Smith and Lynette Smith (collectively, "the Smiths") appeal from the district court's grant of summary judgment in favor of Nick Roundtree, Archie Davis, and Anthony Brown (collectively, "individual Defendants"). The Smiths brought this action pursuant to 42 U.S.C. § 1983 for alleged violations of their Fourth, Fifth, Sixth, and Fourteenth Amendment rights. Their allegations stem from an incident during which the individual Defendants, police officers of the city of Darien, Georgia, helped Debra Newman obtain personal items from a shed on the Smiths' land. On appeal, the Smiths argue that the district court erroneously concluded that: (1) they did not have standing to raise a Fourth Amendment unreasonable seizure claim; (2) even if there were a genuine issue of fact regarding standing, the individual Defendants were entitled to qualified immunity on the unreasonable seizure claim; and (3) the Smiths had not properly raised state law claims. After careful review, we affirm.

The essential, undisputed facts are these. Newman is the mother of one of the Smiths' grandchildren, and she lived with the Smiths for a short time. Newman complained to local police officers that the Smiths were preventing her from obtaining her personal property from their shed. When Brown went to the Smiths' home in response to Newman's complaint, Mrs. Smith said that she would not allow Newman onto her property or give her any items from the shed without a warrant or court order. Roundtree arrived later that day and informed Mrs. Smith

2

that she had to let Newman retrieve her property if she owned items in the shed. Mrs. Smith responded that she and Mr. Smith would obey a warrant or a court order, and she asked that the officers return only when they had a warrant or a court order and when Mr. Smith had returned from work.

Roundtree spoke with Davis on the phone, and Roundtree indicated that he had spoken to a magistrate judge about the situation. From their conversation, Davis mistakenly believed that Roundtree already had obtained a court order, but Roundtree had not. Davis went with Newman to the Smiths' home after Mr. Smith had returned from work. Davis told the Smiths that they needed to comply with Newman's request to retrieve items from their shed because there was a court order. The Smiths allowed Newman to collect several boxes from the shed, which they claim contained items owned by their adult children. The Smiths do not know whether Newman took any items that belonged to them. The Smiths later learned that no court order had been issued.

The Smiths filed the instant § 1983 action against the individual Defendants and the City of Darien, alleging violations of their Fourth, Fifth, Sixth, and Fourteenth Amendment rights. The City of Darien and Roundtree filed motions to dismiss the complaint. At a hearing on the motions, the Smiths conceded that the only viable constitutional claim set forth in the complaint was a Fourth Amendment unlawful seizure claim. They also conceded that a state law claim for

3

conversion was inadequately pled.  The district court dismissed the City of Darien as a defendant and dismissed all claims except the Fourth Amendment unlawful seizure claim against the individual Defendants.  The individual Defendants later filed motions for summary judgment.  In response, the Smiths asserted, for the first time, several state law claims and violations of the Georgia Constitution.  The district court concluded that the Smiths lacked standing to raise the Fourth Amendment wrongful seizure claim, the individual Defendants were entitled to qualified immunity on that claim, and the state law claims were improperly raised.  This appeal followed.

We review the district court's grant of summary judgment de novo. Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1273 (11th Cir. 2010).  Summary judgment is warranted when, viewing the evidence in the light most favorable to the non-movant, the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

In this case, the district court did not err in determining that the Smiths lacked standing to raise their Fourth Amendment unlawful seizure claim.  In order to satisfy Article III's "case or controversy" requirement, a plaintiff must show that: (1) he has suffered an injury in fact that is concrete and particularized as well as actual or imminent; (2) the injury is fairly traceable to the challenged conduct of

4

the defendant; and (3) the injury is likely to be redressed by a favorable decision. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000).  An "injury-in-fact" requires an invasion of a legally protected interest. Hollywood Mobile Estates, Ltd. v. Seminole Tribe of Fla., 641 F.3d 1259, 1265 (11th Cir. 2011).  Here, the undisputed evidence showed that the individual Defendants did not invade the Smiths' legally protected interest.

A "seizure" of property under the Fourth Amendment "occurs when there is some meaningful interference with an individual's possessory interests in that property."  Soldal v. Cook Cnty., Ill., 506 U.S. 56, 61 (1992) (internal quotation marks and citation omitted).  The Smiths testified in depositions that their adult children owned the seized property.  However, Fourth Amendment rights are personal rights that cannot be asserted vicariously.  See Rakas v. Illinois, 439 U.S. 128, 133–34 (1978).  The Smiths also admitted that they were unsure whether Newman had taken any of their property because personal items they thought were missing might be in the shed.  Mere speculation is insufficient to create a genuine issue of material fact.  See Cordoba v. Dillard's Inc., 419 F.3d 1169, 1181 (11th Cir. 2005).

Nor did the Smiths have a possessory interest by virtue of a bailment.  "A bailment involves either an express or implied mutual agreement to safe keep property between the owner and its custodian either gratuitously or for some

consideration." <u>Bohannon v. State</u>, 555 S.E.2d 112, 114 (Ga. App. 2001). Under Georgia law, "[w]here, although an article is turned over generally to be stored on premises owned by another, where the owner retains the right to remove it at will without the knowledge of the person in charge of the premises, no bailment arises." <u>Mossie v. Pilgrim Self-Serv. Storage</u>, 258 S.E.2d 548, 549 (Ga. App. 1979). The Smiths testified in depositions that their children were free to enter the shed and obtain their property without their consent at any time. Accordingly, the undisputed record reveals that the Smiths were not bailees for the items seized.[1]

The district court also did not err in determining that the individual Defendants were entitled to qualified immunity. Qualified immunity shields government officials sued in their individual capacities from liability against a plaintiff's claims under § 1983 if the officials' conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Grider v. City of Auburn, Ala.</u>, 618 F.3d 1240, 1254 (11th Cir. 2010) (quotations omitted). "The initial inquiry in a qualified immunity case is whether the public official proves that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." <u>Id</u>. at 1254 n.19 (quotation omitted). The parties do not dispute that the individual Defendants

---

[1] The Smiths argue, for the first time on appeal, that they had a possessory interest in their children's seized property under O.C.G.A. § 51-10-2, which creates a tort action for interference with mere possession of chattel. However, the Smiths did not raise this argument before the district court and, therefore, we will not consider it on appeal. <u>Access Now, Inc. v. Sw. Airlines Co.</u>, 385 F.3d 1324, 1331 (11th Cir. 2004).

were acting within the scope of their discretionary authority. Courts then apply a two-part framework to evaluate a qualified immunity defense. Id. at 1254. The court must ascertain "whether the plaintiff's allegations, if true, establish a constitutional violation." Id. If there was a constitutional violation, another inquiry is "whether the right violated was 'clearly established.'" Id. This analysis may be done in the order most appropriate for the case. Id. Because the Smiths failed to demonstrate on the undisputed evidence before the district court that they had a possessory interest in the seized items, the district court did not err in determining that there was no constitutional violation. See Soldal, 506 U.S. at 61.

Finally, the district court did not err by concluding that the Smiths failed to properly raise any state law claims. The complaint did not name any causes of action under Georgia law. At the motion to dismiss stage, the Smiths argued that they were entitled to assert a Georgia law conversion claim in the action, although they conceded that a conversion claim was insufficiently pled, and they did not attempt to amend their complaint. In response to the motions for summary judgment, the Smiths sought to add due process, trespass, and assault claims under Georgia law and the Georgia Constitution. However, plaintiffs may not amend their complaint at the summary judgment stage, once discovery has commenced, by raising new claims. See Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1297 (11th Cir. 2006) (rejecting a new basis for a pending claim raised

7

during summary judgment proceedings).  Thus, the district court properly declined

to address these claims.

Accordingly, we affirm the judgment of the district court.

**AFFIRMED.**